Madeleine R. Lockett, Executrix of the Estate of Leonard B. Lockett, Deceased, Appellant, v. Mamie L. Lockett, Appellee.

Gen. No. 8,574.

Opinion filed May 11, 1932. Rehearing denied October 4, 1932.

COSTIGAN & WOLLRAB, for appellant.

WHITMORE & WHITMORE, for appellee.

MR. PRESIDING JUSTICE NIEHAUS delivered the opinion of the court.

This is an appeal from the order of the circuit court of McLean county allowing a claim of Mamie L. Lockett, amounting to the sum of four thousand two hundred dollars ($4,200), against the estate of Leonard B. Lockett, deceased. The claimant was a former wife of the deceased, and her claim against the estate is for an alleged "balance due under the terms of a settlement contract and trust deed." The probate court disallowed the claim but on appeal from

the probate court to the circuit court, it was allowed, to be paid in due course of the administration of the estate.

The settlement contract, which is the basis of the claim, was executed September 20, 1916, by the deceased who was then the husband of the claimant but was living separate and apart from the claimant; and the settlement contract was executed to satisfy the legal obligation of the deceased, to provide proper support and maintenance and alimony for his wife; and to settle the respective property rights of the parties. The settlement contract is as follows:

"This agreement, entered into and executed on this 20th day of September, 1916, between Leonard B. Lockett, hereinafter mentioned as the husband, and Mamie L. Lockett, hereinafter mentioned as the wife, witnesseth:

"That the wife has separated from the husband because of the fault and misconduct of the husband and for other lawful justifiable cause.

"That because of the commission of said fault and misconduct by the husband and on account of said other justifiable cause, the parties hereto, said husband and wife, are both convinced that it will hereafter be impossible for them to live and co-habit together as man and wife.

"Recognizing these conditions, and desiring that the obligation of the husband to furnish suitable support for the wife be fully discharged, and desiring to settle her inchoate rights in his property, real and personal, the husband makes the provision hereinafter set forth, for the support of the wife and for the settlement of her inchoate dower and other rights in his property, real and personal, and the wife accepts the said provisions in full settlement of all her claims as a wife, to support by her said husband, and of her rights in his said property, real and personal.

"First: The husband agrees to and does, execute simultaneously with the execution of this agreement, a deed of trust to A. E. DeMange as trustee, conveying to him the said A. E. DeMange as trustee, and to his successor in trust, for the execution of the trust hereinafter mentioned, the following described real estate, to-wit:

"The northeast quarter (NE¼), the Northwest quarter (NW¼), and the north half (N½) of the Southeast Quarter (SE¼), of Section sixteen (16) Township Nineteen (19) north, Range eight (8) east of the Third Principal Meridian, in Lee County, Illinois, containing four hundred (400) acres, more or less.

solely for the carrying out of the said trusts hereinafter set forth, and for no other purpose.

"Second: The husband represents and states that the title to the said four hundred acres of land is in him in fee simple, subject only to a mortgage of Twelve Thousand Dollars ($12,000) to the Franklin Life Insurance Company of Springfield, Illinois.

"Third: That he, the husband, will pay off, discharge, and cause to be released, the said Twelve Thousand Dollar mortgage, principal and interest, on or before August 4th, 1917.

"Fourth: The conveyance by the said husband of the said real estate to said trustee, to have expressed therein that said conveyance is to secure to the wife the payment to her of an annuity quarterly in advance, commencing October 1st, 1916, and continuing during her natural life, of the sum of Twenty-four Hundred Dollars ($2400.00) per year, out of the rents and profits of the said land. The said trustee, out of the said rents, to pay also the annual taxes assessed against the said land, and all necessary insurance premiums for the protection of the improvements thereon, and also his own reasonable charges and expenses.

"Fifth: The husband binds himself, personally to pay said Twenty-four Hundred Dollars ($2400.00) each year in said quarterly payments, during the life of the wife, out of his own funds or income other than said rents and profits of said land, regardless of what the income of the said land may be, but the said rents and profits from the said land and the land itself, shall stand as security for the payment of the said Twenty-four Hundred Dollars ($2400.00) annuity.

"Sixth: The husband further agrees to pay to the wife, in addition to all other provisions herein embodied, five (5) per cent semiannual interest on the sum of Seven Thousand Dollars ($7,000.00); said interest to commence March 1st, 1917; and in case the wife desires it and notifies the husband to that effect in writing ninety days (90) before she desires it, he, the husband, shall pay her, out of the said Seven Thousand Dollars, Two Thousand Dollars ($2,000.00) cash. Provided, that the husband shall not be required to pay said Two Thousand Dollars prior to March 1st, 1918. And upon like notice, the husband shall pay to the wife the remaining Five Thousand Dollars ($5,000.00) of said sum. Provided, the husband shall not be required to pay said last mentioned sum of Five Thousand Dollars before January 1st, 1919. The said four hundred acres of land hereinabove described and its yearly rents and income shall stand as security for the payment of said interest in this paragraph mentioned and of the said principal of the said Seven Thousand Dollars.

"Seventh: The husband agrees to furnish an abstract of title to said four hundred acres certified down to the date of the execution and delivery of the agreement, showing clear title in him to the said four hundred acres of land; the abstract for the lands to be delivered to the trustee.

"Eighth: The husband agrees to give and deliver to the wife forthwith after the execution of this agree-

ment, the new Hudson coupe motor car, for her own separate property now owned by him and in his possession.

"Ninth: In the event that the wife survives the husband, the said trustee, A. E. DeMange, shall by quitclaim deed convey the said four hundred acres of land to the wife for her life with remainder in fee simple to the son, Leonard B. Lockett, Junior, without power of alienation of the said four hundred acres of land before he, the said son, reaches the age of thirty-five (35) years.

"If the said son survives both his mother and father, the said trustee shall likewise convey the said four hundred acres to the son with the same restriction on the alienation of the same. If the said son survives the mother and not the father, the trustee, in that event, shall convey the said four hundred acres to the father for his life, with the remainder to the son, with a like restriction on the alienation of the same.

"If the father survives both the said wife and son, then and in that event, the said trustee shall convey said four hundred acres of land, by quitclaim deed, to the father.

"If the wife survives both the husband and son, then the said trustee shall convey the said four hundred acres of land to the wife in fee simple.

"Tenth: The wife agrees to and does hereby release all of her dower, homestead, and other rights as wife in and to all of the husband's other real estate wherever located, except the four hundred acres of land hereinabove described, and she agrees to release such rights by quitclaim deed or otherwise, whenever called upon to do so by the husband. Provided, the husband shall not sell his Dakota land now owned by him and shall not call for the wife to release her dower interest therein until he has paid the Twelve Thousand Dollar mortgage on the said four hundred acres of land hereinabove described.

"Eleventh: The husband agrees at his own expense, to properly educate the only child of the parties hereto, Leonard B. Lockett, junior, now of the age of five (5) years, and when he arrives at suitable age, to send him to college, paying all of his necessary expenses; the said son to choose any college course which he may then desire.

"Twelfth: The wife shall have the custody, control and education of the said Leonard B. Lockett, Junior, subject to reasonable visits at suitable times to and with the husband, his father.

"Thirteenth: The husband agrees to pay for the legal services of A. E. DeMange rendered in giving legal counsel to both parties and in the preparation of this contract and trust deed herein mentioned, so that no obligation therefor will rest upon the wife.

"Fourteenth: The husband agrees to pay the Twenty-four Hundred Dollars hereinabove provided for, quarterly in advance, to A. E. DeMange, the trustee hereinabove mentioned, promptly on the 1st day of each quarter; to be paid by the said trustee to the wife, either direct or to be by the trustee deposited in bank for the wife, as she may elect and prefer; and in default of the payment of the husband of any quarterly installment at any time when such installment is due, the said trustee is authorized, empowered and directed to pay the same out of any income received by him from the said four hundred acres of land.

"Fifteenth: The husband by this agreement, releases all of his rights as husband, inchoate or otherwise, in and to any separate property, real or personal, owned by the wife or which she may hereafter acquire, and agrees to release the same by deed whenever called upon to do so.

"Sixteenth: The parties hereto declare, the husband for himself, and the wife for herself, that they

have taken legal advice as to their respective rights and interests and that they have a full understanding of the meaning, construction, purport and consideration of this contract and that they have read and understand the said trust deed to A. E. DeMange; and they each of them declare that they execute and deliver the said contract, each to the other, in the light of such understanding, having in view the fact that it is impossible for them to again live and cohabit together as man and wife, and to forever settle under any and all contingencies their respective dower, homestead and marital rights.

"Seventeenth: The husband agrees to and does on the execution of this agreement, pay to the said wife, receipt of which is acknowledged, the sum of Two Hundred ($200) Dollars, for her immediate needs and for her own separate use until the payment to her on October 1st, 1916, of the first quarterly payment due to her under this contract.

LEONARD B. LOCKETT (Seal)
MAMIE L. LOCKETT (Seal)"

At the February term, 1917, after the execution of the contract, the circuit court of Cook county granted the claimant a decree of divorce which dissolved the marriage relation between the parties; and concerning the matter of alimony, the decree makes the following provision:

"It is further ordered, adjudged and decreed by the Court that the written agreement of September 20, 1916, between the Complainant and the Defendant, providing a settlement of a certain amount in lieu of alimony be made a part of this decree, and that a copy of said agreement be attached to the certificate of evidence in this cause."

In order to carry into effect the trust provisions of the settlement contract after A. E. DeMange, the original trustee, had resigned, the deceased made a con-

veyance in trust on March 21, 1918, to the People's Bank of Bloomington, which is as follows:

"This Indenture Witnesseth: That I, Leonard B. Lockett of the City of Bloomington, County of McLean and State of Illinois, party of the first part, and grantor, for and in consideration of the sum of One Dollar to me paid, the receipt of which is hereby acknowledged, and for other good and valuable consideration, do hereby convey and warrant to the People's Bank of Bloomington, Illinois, trustee, a corporation organized under the laws of the State of Illinois, and duly qualified under the laws of the State of Illinois, to act as trustee in all matters of trust, party of the second part and grantee, and to their successors in trust, for the uses and purposes hereinafter set forth, all of the following described real estate, to-wit:

"The Northeast Quarter, the Northwest Quarter, the North half of the Southeast Quarter, of Section Sixteen (16) Township Nineteen (19) North Range Eight (8) East of the 3rd P. M. containing four hundred acres more or less, situated in the County of Lee in the State of Illinois, in trust nevertheless and for and during the natural life of Mamie L. Lockett. In case of the inability or refusal at any time hereafter of the aforementioned grantee to act as trustee, then and in that event the said Leonard B. Lockett and the said Mamie L. Lockett shall agree upon some other person or corporation to act as trustee, and in the event that said parties cannot agree upon some person to act as successor in trust that then the Circuit Court of McLean County, upon proper application by either of said parties or the aforementioned grantee shall appoint some suitable person or corporation to act as successor of said trustee.

"The trusts for the carrying out of which this deed is executed are as follows:

"1. The grantee, trustee herein, shall keep the improvements on said land insured for their reasonable insurable value, in a reliable insurance company or companies and out of the rents and profits of said land pay the premiums thereon.

"2. The trustee shall before said land is offered for sale for delinquent taxes, each year out of the rents and profits derived from said land, pay the said taxes.

"3. The trustee shall keep said land rented to as good tenants as by reasonable business diligence it may be able to procure, and it shall make all reasonable efforts to collect the rents and profits of said land when the same shall accrue, and under the lease or leases therefor.

"4. After the payment of the said insurance premiums and taxes, the trustee shall devote so much as may be necessary of the rents and profits by it collected to the payment of the sum of Twenty-Four Hundred Dollars per year to Mamie L. Lockett in quarterly payments, commencing April 1, 1918, and also five per cent semiannual interest on the sum of $7,000 from March 1, 1918, and until the principal sum of $7,000 is paid to the said Mamie L. Lockett by the grantor, which said $7,000 the grantor has agreed to pay on or before March 1, 1919.

"5. After the payment of said insurance premiums, taxes and the said annuity to the said Mamie L. Lockett, and the reasonable charges of the trustee for its services, and all necessary expenses incurred in the collection of said rents and profits, if any, the said trustee shall pay the balance if any, that remains of said rents and profits in its hands at the end of each year after October 1, 1918, to the grantor herein Leonard B. Lockett, provided that only so much of said rents and profits shall be paid to the said Mamie L. Lockett as may be necessary to keep the quarterly installments of said annuity and said five per cent

semiannual interest on said $7,000 aforesaid paid promptly when due and if the grantor shall pay all of said installments and interest as and when they come due, then all of said rents and profits shall be paid over by the said trustee to the grantor, Leonard B. Lockett, within a reasonable time thereafter.

"6. Upon the joint written request of said grantor herein Leonard B. Lockett and the said Mamie L. Lockett, during the lifetime of the said Mamie L. Lockett under their hands and seals, duly acknowledged before a Notary Public or other officer authorized by law to take acknowledgments, and the payment to the grantee of its reasonable charge and expenses, the grantee herein shall reconvey by quitclaim deed the above described premises to the grantor herein. In the event that Mamie L. Lockett, the former wife of Leonard B. Lockett, survives him, the trustee shall by quitclaim deed convey the said described premises to the said Mamie L. Lockett for her life with remainder in fee simple, to their son, Leonard B. Lockett, Jr., without power of alienation of the said premises before their said son reaches the age of thirty-five years. If the said Leonard B. Lockett, Jr., survives both his mother and father, the trustee in that event shall likewise convey the said premises to said son with the same restrictions on the alienation of the same. If their said son survives the mother and not the father, the trustee in that event shall convey the said premises to the father, Leonard B. Lockett, for his life with remainder to the said Leonard B. Lockett, Jr., with a like restriction on the alienation of the same. If the said Leonard B. Lockett survives both his said wife and son, then in that event the trustee shall by quitclaim deed convey the said premises to the said Leonard B. Lockett, the grantor.

"If the said Mamie L. Lockett survives both her said husband and her said son, then said trustee shall

convey said premises to Mamie L. Lockett, in fee simple.

"7. The grantee assumes no responsibility or liability except for reasonable diligence in the discharge of the trust herein specified and shall not be held for any act or default of any agent, attorney or employee selected by it with reasonable discretion. In the event that it becomes necessary to employ counsel or attorney in any matter appertaining to said trust or in any litigation that may arise by reason thereof, then said trustee shall be reimbursed out of said trust for all reasonable attorney's fees expended by it, it being understood that during the lifetime of said grantor all such expenses shall be paid by him.

"Dated this 21st day of March, A. D. 1918.

Leonard B. Lockett    (Seal)"

After the divorce had been granted to the claimant, the deceased married again. He died on October 25, 1929. His second wife and a daughter by the second wife survived him and are the sole beneficiaries under his will which also contained the following provision concerning his former wife:

"My former wife, Mamie L. Lockett, and my son, Leonard B. Lockett, by my former wife, have been taken care of by an agreement held in trust by the People's Bank of Bloomington, Illinois, and cannot come in for any more property or money, as this agreement was a final settlement for both."

From the foregoing recitation of facts which are disclosed by the record, it is clear that the claimant has no claim upon the estate of her former husband, unless such claim arises from the provisions of the settlement contract herein set forth, and the only clause in the settlement contract which has reference to the claim of the appellee is the sixth clause. The sixth clause is as follows:

"The husband agrees to pay to the wife, in addition to all other provisions herein embodied, five (5)

per cent semiannual interest on 'the sum of Seven
Thousand Dollars ($7,000.00); said interest to com-
mence March 1, 1917; and in case the wife desires
it and notifies the husband to that effect in writing
ninety (90) days before she desires it, he, the husband,
shall pay her, out of the said Seven Thousand Dollars,
Two Thousand Dollars ($2,000) cash. Provided, that
the husband shall not be required to pay said Two
Thousand Dollars prior to March 1, 1918. And upon
like notice, the husband shall pay to the wife the re-
maining Five Thousand Dollars ($5,000.00) of said
sum. Provided, the husband shall not be required to
pay said last mentioned sum of Five Thousand Dol-
lars before January 1, 1919. The said four hundred
acres of land hereinabove described and its yearly
rents and income shall stand as security for the pay-
ment of said interest in this paragraph mentioned and
of the said principal of the said Seven Thousand
Dollars.''

This clause provides for the payment of five per
cent interest on the sum of $7,000 in addition to the
other payments to be made to the claimant for her
support and maintenance, but no part of the $7,000 is
payable to the claimant unless the claimant should
desire it to be paid to her in two parts, and upon the
express condition that she notify her husband in writ-
ing to that effect, namely, for the payment of a sum
of $2,000, and thereafter for the payment of a sum
of $5,000, 90 days before she desires such payment to
be made. There is no evidence in the record that the
claimant at any time during the lifetime of the de-
ceased gave any notice in writing as required by this
clause, that she wanted the deceased to pay her the
$2,000 or the $5,000 which constituted the $7,000-
obligation referred to. We conclude, therefore, that
the deceased never became legally obligated under the
terms of the settlement contract to pay the $7,000

in question, or any part thereof; that no liability to pay the same arose during the lifetime of the deceased and none therefore existed against the estate at the death of the deceased.

We conclude therefore that the claim should have been disallowed and the judgment allowing the claim is therefore reversed.

*Reversed.*